COMPLAINANT'S AFFIDAVIT:   Angelie D. Jackson

AFFIDAVIT                                                                WASHINGTON, DC

1. **State your name, current title, series, grade, and race.**

Angelie Denise Jackson, Procurement Analyst, GS-1102-14, Black

2. **How long have you worked in your present position? (please give a brief employment history)**

I have worked in the Departmental Offices, Office of Procurement, as a Procurement Analyst since May, 1990. Of the current staff, I have the longest tenure in the office.

9/85 - I began my Federal career with the IRS
11/85 - I moved to the U.S. Secret Service
5/86 - purchasing agent, Procurement Division, USSS
11/86 - promoted GS-1102-5 contract specialist (career ladder to GS-12)
5/90 - GS-1102-11 procurement analyst, Departmental Offices

Noteable awards during that time period are:

12/2002 – Procurement Executive's Council Award (clock and cash) for participating in the Governmentwide Competitive Sourcing Conferences: 3/02 - Expedited Cash Award for high quality service for coordinating/managing two Treasurywide Competitive Sourcing Conferences; 12/00 – HR Connect Award (Plaque and cash) for outstanding contributions supporting HR Connect Program management and acquisitions; 7/98 – Certificate of Appreciation – Project Manager, Department of the Treasury Acquisition Regulation Rewrite Team (signed by Deputy Assistant Secretary for Management Operations and the Senior Procurement Executive); 9/95 – Vice President Al Gore's National Performance Review "Hammer Award" for innovative work on the Procurement Team;6/91 – Certificate of Merit (signed and given by the Assistant Secretary, Management).

3. **Issue:   Whether you was discriminated against on the basis of your race (Black), when you was non-selected for a Supervisory Procurement Analyst, GS-1102-15, position under Vacancy; Announcement Number 2002-199AB.**

A. **Describe in chronological order all the events you believe are related to the issue. Specify the exact date the events occurred, who was involved, and what happened. (Were you interviewed, reason for the non-selection, etc.)**

Vacancy announcement for GS-1102-15, Supervisory Procurement Analyst (o/a 1999/2000): I applied, was qualified and referred. To my knowledge, Mr. Rindner interviews one staff member, Terri Toplisek. She informs me that she was interviewed for the position without notice, and it was awkward. I did not have an opportunity for an

interview. Mr Rindner selects Nancy Kerlin, who is the Bureau Chief Procurement Officer, U.S. Secret Service.

Vacancy announcement for GS-1102-15, Senior Procurement Analyst (o/a 1999/2000): I applied, was qualified and referred. To my knowledge, Mr. Rindner did not interview any staff members. He interviews people who work outside the agency. Several staff members note and recognize various individuals, who are also GS-14's that we have worked with on various workgroups entering and leaving Mr. Rindner's office (who are on the 'Cert.'). Mr. Rindner hires Ronne Rogin.

Vacancy announcement for a Supervisory Procurement Analyst, GS-1102-15 position, Announcement # 2000-199AB: The vacancy announcement was issued on 7/19/02, closed on 7/25/02, and Mr. Rindner forwarded his selection via e-mail to the staff on 8/9/02 at 5:54 p.m. I became aware of his selection on 8/13/02, when I returned to the office from training and my regular day off.

In summary, there have been four (4) vacancies in the Office of the Procurement Executive for the GS-1102-15 procurement analysts. I applied, was qualified and was referred for 3 of the 4 positions. Because of Mr. Rindner's discriminatory hiring practices, since his arrival, I believe this is an on-going and continuous pattern. (Note: I have requested copies of the three other vacancy announcements from Treasury's Office of Personnel Resources. The personnel specialist who was responsible for the Office of Procurement has moved to another position outside Departmental Offices, and the current specialist indicated that she would try to locate the announcements. Unfortunately, I did not retain copies of the previous announcements, 1) because I believed there would be other advancement opportunities, and 2) I had no intention of filing an EEO complaint at those times.

I firmly believe this is a continuing violation. I did not complain about the previous violations, because I was reasonably certain that there would be opportunities for advancement/promotion.

**B.    Please explain why you believe that you were treated differently than others.**

In the most recent instance, Mr. Rindner selected a less experienced, less qualified non-Black candidate. I was the most qualified. In each instance, I was never given an interview; and therefore was never considered for any position.

Based on the method that Mr. Rindner hires and/or promotes, I have no chance of being promoted; thus having a desperate impact on my ability to be promoted and to perform my current duties. Historically, during his tenure, Mr. Rindner has a history of hiring non-Black females. I, therefore, believe he will never consider me for selection because I am black.

29

**C. Did you speak to any management officials about the non-selection? If so, with whom, when, and what was the response?**

On September 20, 2002, I met with Mr. Rindner to discuss my concerns, which included:

- I met the criteria for position description, and I more than satisfied the KSAs
- I had the most time in the office actually performing the duties (most senior)
- In terms of KSA's, Kevin Whitfield and I had actually been working the longest on FAIR Act issues. In fact, I had been working on FAIR Act issues as long as Mr. Rindner had been in the office (approx. 2 years), where the selectee had only been working in the office for approx. 1 year.
- I have a proven record in accomplishing tasks/assignments/projects as well as leading working/functional teams and working with upper management.
- My questions were primarily:
    - What were the deciding factors in selection?
    - Did Mr. Rindner consider experience, knowledge of the institution/organizational structure; and who has great working relationships with outside customers?

Mr. Rindner stated that the selection was based on consensus. He queried the office 15's, Nancy, Ronne and Richard, and that they decided who was the best selection based on how they (people applying for the position) got along in the office. I asked why, based on the Duties and Responsibilities and KSAs and his length of time in the office, I wasn't considered.

I stated that I felt I had no opportunities for selection, and I also felt like he had not fully considered me for any of the positions. I stated that just as he had given the least of us, Jan, in terms of experience and time on the job, an opportunity for growth, that I deserved the same or better opportunities.

I also stated that I was disappointed not to get an interview, and he stated that he thought interviews might be offensive to the staff, since he had worked with us almost three years, and to make a selection after that, would offend us.

Overall, I left the meeting dissatisfied with Mr. Rindner's explanations, and I still felt that he had not fully considered me for any of the positions.

**\*\***

On 10/11/02, a meeting with the EEO Counselor was held in Corey Rindner's office. The attendees were: Corey Rindner, Senior Procurement Executive; Ronne Rogin, Supervisor; Darryl Bailey, EEO Counselor; and Angelie Jackson. We met to discuss my concerns regarding selections of GS-1102-15 positions, particularly the most recent.

I stated my concerns that over the past 2 ½ or so years, four selections were made for vacancy announcements issued by this office. I applied for three of those vacancies,

30

made the cert, was referred, and was not given an interview in any instance, and that I was unsure whether the selection official had even read my résumé/SF 171. I pointed out that all four selections had been white women.

There appears to be a pattern, and when I had previously talked with Corey regarding my concerns, I left that meeting dissatisfied, because he 1) talked with me about additional work assignments that I could do, that he called "spaghetti." 2) he really had no plan (developmental) that could direct me, and 3) he told me that the selection for the last GS-1102-15 was made by consensus. He said he had gone to the other GS 15s in the office, and had gotten their feedback on who got along well with others in the office.

Mr. Rindner denied making the consensus statement. I reminded him of the conversation, and I stated that the notes I had written after the meeting reflected his statements. I reminded him of how I interjected and told him 1) Richard had never really worked very closely with me, 2) Ronne, although on the same team, had little to do with my work and very little contact with me (she was not my supervisor during that time), and 3) that of the three GS 15s, the only one who would have been qualified to speak on my behalf would have been Nancy Kerlin. I also reminded him that I got along well with everyone in our office.

I summed up my position by stating that I really did not feel that there were any promotional opportunities for me in the office, based on his prior selections, based on not getting interviews, and based on the way the last vacancy was conducted.

Ronne Rogin passed out a document, "Proposed Projects for OPE Employee Development", which supposedly would help me gain experience to become competitive.

I then restated that none of those selected had to complete any of the assignments prior to being selected, and I still could not understand why I had to. It was apparent that based on this listing and Ronne's and Corey's remarks, they had not read my résumé. Ronne said that maybe she should read my résumé, and maybe give me some pointers on how to make it more competitive.

That meeting ended with no resolution.

**D. Please compare your qualifications with those of the selectee. Why do you believe you were the better qualified person than the selectee?**

Having over 15 years of experience in Federal procurement, and working in office since 5/90, I am fully qualified for the duties and responsibilities and the KSAs, listed in the vacancy announcement(s). The person recently selected was less qualified for the various duties and responsibilities listed as she had one year or less in her current position, and 3 years overall in Federal procurement. Also, in terms of the KSAs, I had worked on FAIR Act program/issues longer than the person selected, because Mr. Rindner implemented the program in OP prior to Jan's arrival. Kevin Whitfield, Nancy

31

Kerlin and I worked on the FAIR Act program for approximately 1 year prior to Jan Visintainer's arrival.

E.  **Please provide any additional information relevant to this issue.**

I believe Mr. Rindner systematically kept my performance ratings at the "quality" level to further justify his selections.

4.  **Please state what remedies you are seeking.**

I am seeking promotion to the GS-1102-15.

5.  **Provide any documentary evidence supporting your statements.**

6. **List any witnesses you feel can substantiate your statements. Give the phone number and a brief statement as to what they can be expected to testify.**

Kevin Whitfield, Procurement Analyst, Office of the Procurement Executive, (202) 622-0248. I believe Mr. Whitfield also noticed the pattern. He, too, is black, and although, he was qualified for the duties and responsibilities and the KSA's, perhaps he feels he too was not given fair consideration.

Additionally, Mr. Whitfield and I have the longest tenures in the office, have worked on many assignments separately and as teammates, and I believe he can attest to my qualifications and abilities, as well as my professional relationships within and outside the office.

I have read the above statement, consisting of  5  pages and it is true and complete to the best of my knowledge and belief. I understand that the information I have given is not to be considered confidential and that it may be shown to the interested parties.

*Angelie D. Jackson* (signature)
Angelie D. Jackson

Subscribed and sworn to before me
at Washington, DC, on February 26, 2003.

*Lewis T. Muñoz* (signature)
Lewis T. Muñoz
EEO Investigator